**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 25-134-JLH |
| | ) | |
| ADAN CUEVAS-ARTEAGA, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

For nearly two decades, the defendant, Adan Cuevas-Arteaga, has repeatedly flouted the laws of the United States. He has been deported on five separate occasions, only to continue to illegally return. Most recently, he returned to the United States not just to live, but to profit from the distribution of illegal narcotics, selling significant quantities of cocaine. The United States Probation Office has calculated an advisory Guidelines range of 30-37 months. PSR ¶ 108. The government respectfully submits that a 33-month sentence, in the middle of the Sentencing Guidelines range, is sufficient, but not greater than necessary, to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).[1]

**Background**

**I.     Procedural History**

On July 31, 2025, the defendant was charged via criminal complaint with possession of cocaine with intent to distribute. PSR ¶ 1. He was arrested the same day and ordered detained pending trial. PSR ¶ 2. On October 10, 2025, the

---

[1] As is standard practice in this District, the government is submitting a sealed Attachment A to this Sentencing Memorandum.

government filed a two-count Felony Information charging the defendant with possession with intent to distribute cocaine (Count One) and illegal reentry into the United States after removal (Count Two). PSR ¶ 3. On November 12, 2025, the defendant waived Indictment and pleaded guilty to both Counts. PSR ¶ 4. Sentencing is scheduled for April 7, 2026.

## II.    Offense Conduct

In March 2025, law enforcement learned from a cooperating source ("CS") that the defendant was supplying cocaine. PSR ¶ 13. Over the course of the next four months, the defendant conducted four separate controlled sales of cocaine to the CS in Newark, Delaware. PSR ¶¶ 14-17. During these transactions, the defendant provided the CS with a total of 235 grams of cocaine. PSR ¶¶ 20, 31.

Following the fourth controlled purchase, FBI agents arrested the defendant on July 31, 2025, and executed search warrants on his residence and vehicle. PSR ¶ 18. Inside the defendant's home, agents located an additional 333 grams of cocaine, including 274 grams packaged for resale, digital scales, two kilogram wrappers, and a safe containing $7,400 in cash and two rounds of nine-millimeter ammunition. PSR ¶ 18. Another three grams of cocaine were found hidden in the dashboard of his BMW. PSR ¶ 19. In total, the defendant is responsible for 571 grams of cocaine. PSR ¶¶ 20, 31.

In addition to his drug trafficking, the defendant was present in the United States illegally. PSR ¶ 21. The defendant had previously been deported to Mexico on five separate occasions between 2007 and 2019. PSR ¶ 21. Records show no indication

that he ever obtained permission from the Secretary of Homeland Security to reenter the country. PSR ¶ 22.  The defendant has used several different aliases and four different dates of birth in encounters with law enforcement. PSR at p. 2, ¶¶ 53, 56.

**Argument**

**I.    A 33-month sentence is sufficient, but not greater than necessary, to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).**

A 33-month sentence, within the Sentencing Guidelines range, is necessary to reflect the seriousness of the offense and the defendant's personal history and characteristics.  The Court should sentence the defendant within the Sentencing Guidelines range because his professional cocaine distribution operation alone is sufficient to justify that range and because his five prior removals and persistent pattern of illegal reentry are entirely unpunished under the Guidelines, providing a compelling reason not to sentence below it.

**A. The nature and seriousness of the offense warrant a Guidelines sentence.**

The defendant operated a profitable and consistent drug distribution business. He was not merely a low-level offender caught in a single lapse of judgment. Over a multi-month period, he repeatedly met with a buyer to sell multiple ounces of cocaine. PSR ¶¶ 14-17. The discovery of $7,400 in cash, digital scales, and a safe with ammunition demonstrates that he was thoroughly entrenched in the drug trade. PSR ¶ 18.  And during the search of his house, agents discovered two kilogram wrappers: one empty and one partially full, containing cocaine residue.

3

While the defendant is being held responsible for the 571 grams found on the day of his arrest and during controlled buys, the presence of kilo-level packaging confirms that his involvement in the drug trade was more extensive than a single 500-gram snapshot. A person with access to kilograms of cocaine—worth tens of thousands of dollars—is not merely "trying to get by"; they are a professional drug trafficker.

## B. The defendant's personal history and characteristics further support a Guidelines sentence.

The defendant's personal history and characteristics strongly support a 33-month sentence, particularly when viewing his persistent violations of U.S. immigration law. The defendant has been removed to Mexico five times: twice in 2007, twice in 2012, and once in 2019. PSR ¶ 21. He even sustained a prior federal misdemeanor conviction for illegal entry in 2012, for which he was sentenced to probation before being removed for the fourth time. PSR ¶ 21. Prior deportations and even the prior misdemeanor conviction in federal court have been woefully inadequate to deter him.

Crucially, while the defendant pleaded guilty to Count Two (Illegal reentry), the mechanics of the Sentencing Guidelines mean that this conviction does not increase his advisory Guidelines range at all. Because the adjusted offense level for the drug charge (Level 22) is more than 9 levels higher than the adjusted offense level for the illegal reentry charge (Level 8), the multiple-count grouping rules dictate that Count Two assigns zero units. PSR ¶ 43. Therefore, his total offense level is driven entirely by his drug trafficking conduct. PSR ¶¶ 46, 49.

4

Although Count Two does not affect the mathematical calculation of the Guidelines range, it makes the defendant's overall offense conduct more serious. He is effectively facing no additional punishment for illegally entering the United States for the sixth time. And the speed with which the defendant reoffended is telling: he was deported on August 10, 2019, and by October 30, 2021, had been back in the country. PSR ¶ 50. A 33-month sentence is therefore necessary to ensure that the sentence provides just punishment not only for the substantial quantities of cocaine he distributed, but also for his blatant and repeated disregard for U.S. immigration laws.

## II.    The § 3553(a) factors also support a three-year term of supervised release.

Following the 2025 Amendments to the Sentencing Guidelines, sentencing courts are now directed to conduct an "individualized assessment" when deciding whether to impose supervised release, and how long a term to impose. *See* U.S.S.G. §§ 5D1.1, 5D1.2. The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of §§ 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions. Courts are directed to state in open court their reasons for the supervised-release term and the conditions imposed on a defendant. *See e.g.*, U.S.S.G. §§ 5D1.1(d), 5D1.2(b).

5

Here, a three-year mandatory minimum term of supervised release is warranted. As explained above, the defendant has a long history of illegally re-entering the United States and is at significant risk of re-entering while on supervised release from this offense. The above factors also support the mandatory and standard conditions of supervised release listed in § 5D1.3.

## Conclusion

For the foregoing reasons, the government recommends that the Court impose a sentence of 33 months of imprisonment and three years of supervised release.

Respectfully submitted,

Benjamin L. Wallace
United States Attorney

By:   */s/ Alexander P. Ibrahim*
Alexander P. Ibrahim
Assistant United States Attorney

Date: April 1, 2026

6